UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

JAMES ARMSTRONG, NORMAN BABAT,
MICHAEL BALDO, SEAN BARNES,
DARRELL BURNAM, JR., JOSEPH CHIOFALO,
WILLIAM CITRANO, MATT CROSTA,
CRAIG FEIT, JASON V. FERRANTE,
CLARENCE GRIER, JERMAINE JOHNSON,
STEPHEN KATZ, FRANK LEON,
JASON LIEBERMAN, ERIC LICURSI,
PAUL LUCIDO, PAUL MCDERMOTT,
KIRK MEYERSON, DIEGO MONTOYA,
BRUCE NAZZARO, SHELDON ROSENBURG,
KENNETH SAUNDERS, CHRIS SIEFERT,
TODD SMILER, ANTHONY SORIANO,
ERIC STAUFENBERG, ERIC TIMMONS,
MICHAEL WALSH, JOHN WILLIAMS,
ANTHONY WONG, ANATOLEY ZAMOSHCHIK,
BRIAN ALTMAN,
TASSOS ANTONAPOULOS, GUISEPPE ARPAIA,
FRANCESCO BARONE, KEITH BISIGNANO,
MATTHEW BRODER, CASSIM BUCARY,
KATHLEEN BURNAM, VERNELL BURRIS, JR.,
LOUIS CHIOFALO, NICHOLAS CIOFFI,
CHRIS DABIERE, JOSHUA FOLDS,
UMBERTO GIALLAMBARDO, OMAR GOICOCHEA,
JAROD GROB, ADAM KAYE,
ROBERT KNUCKLES, JR., ELIAS LEDESMA,
BRIAN LEIBOWITZ, TIAJUANA LOMUPO,
RODD MARCUS, DEDRA MARSHALL,
JEFFERY MOZZETTI, SEAN PARK,
CHRISTIAN RAMIREZ, THOMAS SCAROLA,
MICHAEL SCHIPANI, MAGEN SELLNOW,
MARK STANLEY, RANDY UETZ,
MERVIN B. VAUGHT, JR., ROBERT WERNER,
KEVIN WILLIS, DAVID WOLAN,
IRINA YANKOVSKAYA, RONALD WENIG,

                              Plaintiffs,

          -against-

HOMEBRIDGE MORTGAGE BANKERS CORP.,
a/k/a REFINANCE.COM, NICHOLAS BRATSAFOLIS,
JORDAN HARRIS, JAMES CLOONEY,
DAVID PANKIN, and JOHN DOES 1-10,

07-CV- 1024 (JS) (ARL)
*Consolidated Action*

**SECOND
AMENDED COMPLAINT**

*Jury Demanded*

Defendants.

-------------------------------------------------------------------x

Plaintiffs by their attorneys the Law Office of Robert N. Felix, Fugazy & Rooney LLP, the Law Offices of Donald J. Jaret P.A., The Shavitz Law Group, Damian & Valori LLP, Lindebaum & Silber, PLLC, and the Law Offices of Howard Balsam, for their Second Amended Complaint, allege as follows:

## SUMMARY OF ACTION

1.     This is an action of four consolidated lawsuits, one of which was filed in the Eastern District of New York, one in the Southern District of New York, and two in the Southern District of Florida, seeking, among other things, unpaid overtime and/or minimum wage compensation, spread of hours compensation, unpaid commissions, liquidated damages, pre- and post-judgment interest and reasonable attorneys' fees and costs relating to Defendants' willful violations of the Fair Labor Standards Act, the New York State Labor Law and the laws of the State of Florida.

2.     Plaintiffs were formerly employed as Loan Officers and/or Mortgage Consultants ("Loan Officers") with HOMEBRIDGE MORTGAGE BANKERS CORP., a/k/a Refinance.com ("Homebridge").

3.     The Plaintiffs were not paid for their overtime hours worked at the rate of time and one-half their regular rate of pay for all of their hours worked in excess of 40 per week, and Homebridge and the other named Defendants, did not maintain records of their actual hours worked.

4.     Some Plaintiffs did not receive "spread of hours" pay as required by New York Labor Law for any day in which their spread of hours, as that term is defined, exceeded 10 hours.

5.     Some Plaintiffs also did not receive minimum wages as required by New York State Law.

6.     Some Plaintiffs did not receive earned commissions in accordance with their terms of employment and as required by New York and Florida law.

7.     As a result, Plaintiffs bring this action pursuant to the provisions of Section 16(b) of the Fair Labor Standards Act, as amended, 29 U.S.C. §216(b), (the "Act" or the "FLSA"), and Section 255(a) of the Portal-to-Portal Act to recover minimum wages, unpaid overtime compensation, an additional equal amount as liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs relating to Defendants' willful violations of the FLSA, and for statutory penalties owed to Plaintiffs by Homebridge Bankers Corp.

8.     In addition, Plaintiffs bring supplemental state claims to recover minimum wages, overtime compensation, unpaid commissions, spread of hours compensation, and/or pre- and post-judgment interest, reasonable attorneys' fees and court costs for Defendants' willful violation of the New York State Labor Law and the laws of the State of Florida.

## JURISDICTION AND VENUE

9.     Jurisdiction over this action is conferred on this Court by Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

10.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because the state claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiffs and Defendants.

11.     Venue lies within this jurisdiction pursuant to 28 U.S.C. §§ 1931 & 1337.

## ALLEGATIONS COMMON TO ALL CLAIMS

12.     Defendant Homebridge is a domestic business corporation organized under the laws of New York, that is authorized to and transacts or transacted business and mortgage lending services in New York within the territorial jurisdiction of this Court and, at all relevant times, conducted said business in the states of New York, Florida and California. Homebridge's principal executive office on file with the New York State Department of State is located at 60 Oak Drive, Syosset, New York.

13.     At all relevant times, Homebridge has been, and continues to be, an "employer" under the Fair Labor Standards Act, the New York State Labor Law and the laws of the states of Florida and California.

14.     Homebridge's business mainly consisted of operating a mortgage loan business in New York, Florida and California.

15.     Homebridge's business was, and is, engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203, and has, on information and belief, annual gross sales of at least $500,000.

16.     Upon information and belief, Defendant NICHOLAS BRATSAFOLIS is, and at all times was, a corporate officer of Homebridge, acting directly or indirectly in its interest in relation to its employees, and who exercised sufficient control over the day-to-day operations of Homebridge, and, therefore, is an employer of the Plaintiffs within the meaning of the FLSA.

17.     Defendant JORDAN HARRIS is, and at all times was, a corporate officer of Homebridge, acting directly or indirectly in its interest in relation to its employees, and who exercised sufficient control over the day-to-day operations of Homebridge, and, therefore, is an employer of the Plaintiffs within the meaning of the FLSA.

18.     Defendant JAMES CLOONEY is, and at all times was, a corporate officer of Homebridge, acting directly or indirectly in its interest in relation to its employees, and who exercised sufficient control over the day-to-day operations of Homebridge, and, therefore, is an employer of the Plaintiffs within the meaning of the FLSA.

19.     Upon information and belief, Defendant DAVID I. PANKIN is, and at all times was, a corporate officer of Homebridge, acting directly or indirectly in its interest in relation to its employees, and who exercised sufficient control over the day-to-day operations of Homebridge, and, therefore, is an employer of the Plaintiffs within the meaning of the FLSA.

20.     Upon information and belief, Defendants John Does 1-10 are, and at all times were, corporate officers of Homebridge, acting directly or indirectly in its interest in relation to

its employees, and who exercised sufficient control over the day-to-day operations of Homebridge, and, therefore, are employers of the Plaintiffs within the meaning of the FLSA.

21.     Plaintiffs are/were employees of the Defendants as defined by § 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

22.     Plaintiffs worked either in Defendants' New York or Florida offices.  Some of the Plaintiffs worked both in Defendants' New York and Florida offices during their employment.

23.     Plaintiffs were employees of the Defendants during part or all of the last six years and were at all times required to follow the Defendants' guidelines, policies and forms in carrying out Defendants' business of selling loans.

24.     Loan Officers reported to, and worked under the supervision of, Defendants' managerial employees.

25.     Loan Officers' duties did not entail significant discretionary decision making or supervision of others.

26.     The Loan Officers' primary duty was to sell loans over the telephone. These sales activities are conducted almost exclusively inside Defendants' facilities.

27.     Potential borrowers in the main are contacted directly by the Loan Officers based on previously established leads.

28.     The Loan Officers' job was to obtain the information necessary to determine the potential borrower's credit-worthiness, calculate loan terms (rate and fees), sell the loan to the customer according to such terms, and send the legally required disclosures to the customer.

29.     Plaintiffs do not have the discretion to offer loan terms other than those generated by the "rates" program or those that have been approved by Defendants' management.

30.     Because of their duties and the nature of their position, Loan Officers do not fall within any of the exemptions to the minimum pay and overtime pay requirements of the FLSA, 29 U.S.C. §§ 206 and 207, or the New York State Labor Law.

31.     At all relevant times, Defendants had a consistent policy of requiring their Loan Officers, including Plaintiffs, to work in excess of 40 hours per week without paying them

overtime compensation at one and one-half times their regular rate as required by the FLSA and New York State Labor Law.

32.     Loan Officers typically worked 60 to 70 hours per week.

33.     During all relevant times, Defendants failed to pay overtime pay to Loan Officers.

34.     Loan Officers' spread of hours in a single workday typically was in excess of 10 hours.

35.     During all relevant times, Defendants failed to pay spread of hours pay to Loan Officers as required by the New York State Labor Law and its implementing regulations.

36.     During all relevant times, Defendants compensated many Loan Officers by commissions only or on a salary-plus-commissions basis.

37.     A number of the Plaintiffs were not paid minimum wages in violation of the FLSA and, for those working in New York State, the New York State Labor Law.

38.     Defendants wrongfully withheld earned commissions from a number of the Plaintiffs.


**SPECIFIC ALLEGATIONS**

39.     Defendants employed Plaintiff James Armstrong as a Loan Officer in Syosset, New York, for approximately 80 weeks, beginning in October 2004 and ending on or about May 2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Armstrong worked for Defendants, on average, 65-70 hours per week, but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

40.     Defendants employed Plaintiff Norman Babat as a Loan Officer for approximately 52 weeks.  His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Babat worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

41.     Defendants employed Plaintiff Michael Baldo as a Loan Officer in New York, New York, for approximately 65 weeks, all worked prior to January 18, 2005. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Baldo worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

42.     Defendants employed Plaintiff Sean Barnes as a Loan Officer in Florida for approximately 64 weeks during the years 2005-2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Barnes worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

43.     Defendants employed Plaintiff Darrell Burnam Jr. as a Loan Officer in Florida for approximately 58 weeks beginning in January 2006 and ending on or about March 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Burnam Jr. worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

44.     Defendants employed Plaintiff Joseph Chiofalo as a Loan Officer in Florida for approximately 94 weeks beginning first in October 2004 and ending on or August 2006, and again between March 2007 and June 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Joseph Chiofalo worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

45.     Defendants employed Plaintiff William Citrano as a Loan Officer in New York, New York, for approximately 53 weeks. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Citrano worked for Defendants, on average, 75 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

46.     Defendants employed Plaintiff Matt Crosta as a Loan Officer in Syosset, New York, for approximately 17 weeks, beginning in or about July 11, 2005 and ending on or about November 16, 2005. His job duties included originating loans and obtaining credit information

and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Crosta worked for Defendants, on average, 65 or more hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

47.     Defendants employed Plaintiff Craig Feit as a Loan Officer in Florida for approximately 108 weeks during the years 2004-2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Feit worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

48.     Defendants employed Plaintiff Jason V. Ferrante as a Loan Officer in New York, New York. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Ferrante worked for Defendants in excess of 40 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

49.     Defendants employed Plaintiff Clarence Grier as a Loan Officer in New York, New York, for approximately 102 weeks. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received

weekly wages. Plaintiff Grier worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

      50.     Defendants employed Plaintiff Jermaine Johnson as a Loan Officer in Florida for approximately 10 weeks beginning in April 2007 and ending on or about June 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Johnson worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

      51.     Defendants employed Plaintiff Stephen Katz as a Loan Officer in New York, New York, for approximately 103 weeks. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Katz worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

      52.     Defendants employed Plaintiff Frank Leon as a Loan Officer in New York, New York, for approximately 37 weeks. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Leon worked for Defendants, on average, in excess of 40 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over

40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

53.    Defendants employed Plaintiff Jason Lieberman as a Loan Officer in New York, New York. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Lieberman worked for Defendants, on average, 60 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

54.    Defendants employed Plaintiff Eric Licursi as a Loan Officer in Syosset, New York, for approximately 80 weeks, beginning in November 2004 and ending on or about June 2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which defendants on some occasions failed to properly pay. Plaintiff Licursi worked for Defendants, on average, 60 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

55.    Defendants employed Plaintiff Paul Lucido as a Loan Officer in New York, New York, for approximately 58 weeks. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Lucido worked for Defendants, on average, in excess 72 hours per week but was

never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

56.   Defendants employed Plaintiff Paul McDermott as a Loan Officer in Florida for approximately 26 weeks beginning in January 2006 and ending on or about July 2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff McDermott worked for Defendants, on average, 68 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

57.   Defendants employed Plaintiff Kirk Meyerson as a Loan Officer in Florida for approximately 94 weeks beginning on July 1, 2005 and ending on or about June 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Meyerson worked for Defendants, on average, 68 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

58.   Defendants employed Plaintiff Diego Montoya as a Loan Officer in Florida for approximately 44 weeks during calendar years 2005-2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Montoya worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

59.   Defendants employed Plaintiff Bruce Nazzaro as a Loan Officer in Florida for approximately 88 weeks beginning in January 2005 and ending on or about September 2006. His

job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Nazzaro worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

60.    Defendants employed Plaintiff Sheldon Rosenburg as a Loan Officer in Florida for approximately 55 weeks during calendar years 2005 and 2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Rosenburg worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

61.    Defendants employed Plaintiff Kenneth Saunders as a Loan Officer in Florida for approximately 56 weeks during calendar years 2005-2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Saunders worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

62.    Defendants employed Plaintiff Chris Siefert as a Loan Officer in Syosset, New York, for approximately 40 weeks, beginning in November 2004 and ending on or about August 2005. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Siefert worked for Defendants, on average, 60-70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that

term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

63.    Defendants employed Plaintiff Anthony Soriano as a Loan Officer in Syosset, New York, for approximately 160 weeks, beginning first in February 2002 through September 2004 and again on or about August 2005 through April 2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Soriano worked for Defendants, on average, 65 or more hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

64.    Defendants employed Plaintiff Eric Staufenberg as a Loan Officer in New York, New York, for approximately 120 weeks. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Staufenberg worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

65.    Defendants employed Plaintiff Eric Timmons as a Loan Officer in New York, New York, for approximately 43 weeks, all worked prior to January 18, 2005. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Timmons worked for

Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

66.     Defendants employed Plaintiff Michael Walsh as a Loan Officer in Syosset, New York, for approximately 70 weeks, beginning in January 2005 and ending on or about April 2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Walsh worked for Defendants, on average, 60 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

67.     Defendants employed Plaintiff John Williams as a Loan Officer in Florida for approximately 24 weeks beginning in January 2006 and ending on or about June 2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Williams worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

68.     Defendants employed Plaintiff Anthony Wong as a Loan Officer in Florida for approximately 128 weeks during calendar years 2004-2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Wong worked for Defendants, on average,

65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

69. Defendants employed Plaintiff Anatoley Zamoshchik as a Loan Officer in Florida for approximately 24 weeks beginning in April 2006 and ending on or about September 2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Zamoshchik worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

70. Plaintiff Brian Altman was employed in New York, New York, as a Loan Officer for approximately 56 weeks, all worked prior to January 18, 2005. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Altman worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

71. Plaintiff Tassos Antonopoulos was employed in New York, New York, as a Loan Officer for approximately 13 weeks beginning on December 3, 2007 and ending on or about March 4, 2008. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Antonopoulos worked for Defendants, on average, 60 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any

hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

72.     Plaintiff Guisseppe Arpaia was employed as a Loan Officer in Florida for approximately 22 weeks beginning in April 2007 and ending on or about August 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Arpaia worked for Defendants, on average, 64 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

73.     Plaintiff Francisco Barone was employed as a Loan Officer in Florida for approximately 14 weeks beginning in April 2007 and ending on or about July 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Barone worked for defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

74.     Plaintiff Keith Bisignano was employed as a Loan Officer in New York, New York for approximately 15 weeks beginning in September 2007 and ending on or about December 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Bisignano worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

75.     Plaintiff Mathew Broder was employed as a Loan Officer in Florida for approximately 136 weeks beginning in July 2005 and ending on or about March 2008. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Broder worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

76.     Plaintiff Cassim Bucary was employed as a Loan Officer in Florida for approximately 22 weeks beginning in February 2007 and ending on or about August 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Bucary worked for Defendants, on average, in excess of 40 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

77.     Plaintiff Kathleen Burnam was employed as a Loan Officer in Florida for approximately 58 weeks beginning in April 2006 and ending on or about June 2007. Her job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan she sold she was entitled to receive an agreed upon commission and she received weekly wages. Plaintiff Burnam worked for Defendants, on average, 58 hours per week but was never paid overtime pay at one and one-half times her regular rate of pay for any hours over 40 that she worked in any given workweek.

78.     Plaintiff Vernell Burris, Jr. was employed as a Loan Officer in Florida for approximately 74 weeks beginning first in July 2005 and ending on or about June 2006, and then again between March 2007 and September 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he

received weekly wages. Plaintiff  Burris, Jr. worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

79.     Plaintiff Louis Chiofalo was employed as a Loan Officer in Florida for approximately 66 weeks beginning in January 2006 and ending on or about May 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Louis Chiofalo worked for Defendants, on average, 66 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

80.     Plaintiff Nicholas Cioffi was employed as a Loan Officer in Florida for approximately 40 weeks beginning in November 2005 and ending on or about August 2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Cioffi worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

81.     Plaintiff Christopher Dabiere was employed as a Loan Officer in New York, New York for approximately 48 weeks beginning in July 2004 and ending on or about June 2005. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Dabiere worked for defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

82.     Plaintiff Joshua Folds was employed as a Loan Officer in Florida for approximately 26 weeks beginning in January 2007 and ending on or about June 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Folds worked for Defendants, on average, 62 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

83.     Plaintiff Umberto Giallambardo was employed as a Loan Officer in Florida for approximately 58 weeks beginning in April 2006 and ending on or about June 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Giallambardo worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

84.     Plaintiff Omar Goicochea was employed as a Loan Officer in Florida for approximately 130 weeks beginning in February 2006 and ending on or about September 2008. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Goicohea worked for Defendants, on average, in excess of 40 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

85.     Plaintiff Jarrod Grob was employed as a Loan Officer in Florida for approximately 6 weeks beginning in April 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Grob worked for Defendants, on average, 70 hours per week

but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

86.     Plaintiff Adam Kaye was employed as a Loan Officer in Florida for approximately 24 weeks beginning in May 2007 and ending on or about August 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Kaye worked for Defendants, on average, 60 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

87.     Plaintiff Robert C. Knuckles was employed as a Loan Officer in New York, New York for approximately 12 weeks beginning on December 11, 2007 and ending on or about February 29, 2008. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which defendants on some occasions failed to properly pay. Plaintiff Knuckles worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

88.     Plaintiff Elias Ledesma was employed as a Loan Officer in Florida for approximately 86 weeks beginning in June 2005 and ending on or about January 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Ledesma worked for Defendants, on average, 67 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

89.     Plaintiff Brian Leibowitz was employed as a Loan Officer in Syosset, New York, for approximately 104 weeks first from March 2002 to September 2003 and again from April 2005 to October 2005. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Leibowitz worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

90.     Plaintiff Tiajuana Lomupo was employed as a Loan Officer in New York, New York for approximately 50 weeks beginning in or about April 2006. Her job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan she sold she was entitled to receive an agreed upon commission and she received weekly wages. Plaintiff Lomupo worked for Defendants, on average, 47.5 hours per week but was never paid overtime pay at one and one-half times her regular rate of pay for any hours over 40 that she worked in any given workweek.

91.     Plaintiff Rodd Marcus was employed as a Loan Officer in Florida for approximately 47 weeks beginning in June 2007 and ending in or about May 2008. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Marcus worked for Defendants, on average, in excess of 40 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

92.     Plaintiff Dedra Marshall was employed as a Loan Officer in New York, New York for approximately 9 weeks beginning on November 17, 2007 and ending on or about

January 18, 2008. Her job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan she sold she was entitled to receive an agreed upon commission, which defendants on some occasions failed to properly pay. Plaintiff Marshall worked for Defendants, on average, in 65 hours per week but was never paid overtime pay at one and one-half times her regular rate of pay for any hours over 40 that she worked in any given workweek. For individual workdays, her spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but she was not paid one additional hour of pay at the then-applicable minimum wage as required.

93.    Plaintiff Jeffrey Mezzetti was employed as a Loan Officer in Florida for approximately 47 weeks beginning in or about January 2008 and ending on or about November 2008. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Mezzetti worked for Defendants, on average, in excess of 40 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

94.    Plaintiff Sean Park was employed as a Loan Officer in Florida for approximately 110 weeks beginning in February 2005 and ending on or about April 2008. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Park worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

95.    Plaintiff Christian Ramirez was employed as a Loan Officer in New York, New York for approximately 48 weeks beginning approximately March 2007 and ending in or about February 2008. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold

he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Ramirez worked for Defendants, on average, in excess of 40 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

96.     Plaintiff Thomas Scarola was employed as a Loan Officer in Florida for approximately 62 weeks beginning in February 2006 and ending on or about May 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Scarola worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

97.     Plaintiff Michael Schippani was employed as a Loan Officer in Florida for approximately 36 weeks beginning in September 2005 and ending on or about May 2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Schippani worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

98.     Plaintiff Magan Sellnow was employed as a Loan Officer in New York, New York for approximately 21 weeks. Her job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan she sold she was entitled to receive an agreed upon commission and she received weekly wages. Plaintiff Sellnow worked for Defendants, on average, in excess of 65 hours per week but was never paid overtime pay at one and one-half times her regular rate of pay for any hours over 40 that she worked in any given workweek. For individual workdays, her spread of

hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but she was not paid one additional hour of pay at the then-applicable minimum wage as required.

99.   Plaintiff Mark Stanley was employed as a Loan Officer in Florida for approximately 40 weeks beginning in or about April 2004. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Stanley worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

100.   Plaintiff Randy Uetz was employed as a Loan Officer in Florida for approximately 20 weeks beginning in April 2007 and ending on or about August 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Uetz worked for Defendants, on average, 69 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

101.   Plaintiff Mervin Vaught Jr. was employed as a Loan Officer in New York, New York for approximately 28 weeks. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Vaught Jr. worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

102.   Plaintiff Robert Werner was employed as a Loan Officer in New York, New York for approximately 12 weeks beginning on November 5, 2007 and ending on or about January 24,

2008. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Werner worked for Defendants, on average, 70 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

103.   Plaintiff Kevin Willis was employed as a Loan Officer in Florida for approximately 38 weeks beginning January 2008 and ending in or about October 2008. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission, which Defendants on some occasions failed to properly pay. Plaintiff Willis worked for Defendants, on average, in excess of 40 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

104.   Plaintiff David Wolan was employed as a Loan Officer in Florida with for approximately 4 weeks beginning in April 2007. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Wolan worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek.

105.   Plaintiff Irina Yankovskaya was employed as a Loan Officer in New York, New York for approximately 28 weeks beginning approximately September 2004 and ending in or about April 2005. Her job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan she sold

she was entitled to receive an agreed upon commission and she received weekly wages. Plaintiff Yankovskaya worked for Defendants, on average, 65 hours per week but was never paid overtime pay at one and one-half times her regular rate of pay for any hours over 40 that she worked in any given workweek. For individual workdays, her spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but she was not paid one additional hour of pay at the then-applicable minimum wage as required.

106.   Plaintiff Ronald Wenig was employed as a Loan Officer in New York, New York for approximately 80 weeks beginning approximately May 2005 and ending in or about November 2006. His job duties included originating loans and obtaining credit information and were similar to those of all other Loan Officers employed by Defendants. For each loan he sold he was entitled to receive an agreed upon commission and he received weekly wages. Plaintiff Wenig worked for Defendants, on average, 75 hours per week but was never paid overtime pay at one and one-half times his regular rate of pay for any hours over 40 that he worked in any given workweek. For individual workdays, his spread of hours, as that term is defined by statute and regulation, regularly exceeded ten hours, but he was not paid one additional hour of pay at the then-applicable minimum wage as required.

## COUNT I: THE FAIR LABOR STANDARDS ACT
## OVERTIME AND MINIMUM WAGE VIOLATIONS
### (Brought by All Plaintiffs Against All Defendants)

107.   Plaintiffs adopt by reference all preceding paragraphs of this Complaint.

108.   Defendants' failure to pay Plaintiffs premium overtime pay for all hours worked over 40 in any workweek violated the Fair Labor Standards Act, 29 U.S.C. §§ 201-219.

109.   Defendants' failure to pay Plaintiffs the minimum wage for all hours worked violated the Fair Labor Standards Act, 29 U.S.C. §§ 201-219.

110.   Defendants' violation of the Fair Labor Standards Act was willful.

111.   Defendants are liable to Plaintiffs for premium overtime pay, unpaid minimum wage, plus liquidated damages in the amount of the overtime pay and minimum wage

Defendants wrongfully withheld, pre- and post-judgment interest, attorneys' fees, costs, disbursements, and expert witness fees.

## COUNT II: NEW YORK STATE OVERTIME VIOLATIONS
### (Brought by the New York Plaintiffs Against All Defendants)

112.   Plaintiffs adopt by reference all preceding paragraphs of this Complaint.

113.   Defendants' failure to pay premium overtime pay to Plaintiffs employed in New York violated The New York Labor Law and its implementing regulations.

114.   Defendants are liable to Plaintiffs employed in New York for unpaid overtime pay, liquidated damages in the amount of 25 percent of the unpaid over time, pre- and post-judgment interest, attorneys' fees, costs, disbursements and expert witness fees.

## COUNT III: NEW YORK STATE "SPREAD OF HOURS" VIOLATION
### (Brought by the New York Plaintiffs Against All Defendants)

115.   Plaintiffs adopt by reference all preceding paragraphs of this Complaint.

116.   Plaintiffs regularly worked more than 10 hours in a workday.

117.   Defendants willfully and intentionally failed to compensate Plaintiffs employed in New York one additional hour's pay at the basic minimum hourly wage rate, as required by New York law, for each day worked in which their spread of hours exceeded 10.

118.   Defendants are liable to Plaintiffs employed in New York for unpaid "spread of hours" pay, liquidated damages in the amount of 25% of the spread of hours pay found to be due, pre- and post-judgment interest, attorneys' fees, costs, disbursement and expert witness fees.

## COUNT IV: NEW YORK MINIMIM WAGE VIOLATIONS
### (Brought by the New York Plaintiffs Against All Defendants)

119.   Plaintiffs adopt by reference all preceding paragraphs of this Complaint.

120.   Defendants' failure to pay Plaintiffs employed in New York the minimum wage for all hours worked violated the laws of the states of New York.

121.    Defendants' violations of the state minimum wage provisions were willful and not in good faith.

122.    Defendants are liable to the Plaintiffs employed in New York for unpaid minimum wages, liquidated damages, pre- and post-judgment interest, attorneys' fees, costs, disbursements and expert witness fees.

## COUNT V: STATE LAW "EARNED COMMISSION" VIOLATION
### (Brought by All Plaintiffs Against All Defendants)

123.    Plaintiffs adopt by reference all preceding paragraphs of this Complaint.

124.    Plaintiffs were entitled to be paid commissions earned pursuant to the agreed terms of employment.

125.    Defendants willfully and intentionally failed to pay earned commissions to Plaintiffs pursuant to Section 191 of New York State Labor Law and under Florida law.

126.    Defendants are liable to Plaintiffs for unpaid earned commissions, liquidated damages, pre-and post-judgment interest, attorneys' fees, costs, disbursements and expert fees.

## JURY DEMAND

127.    Plaintiffs demand trial by jury on all issues in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and pray that the Court:

A. Enter judgment in favor of Plaintiffs and award them compensatory damages and, where applicable, liquidated damages, attorneys' fees, costs, disbursements, expert witness fees, and pre- and post-judgment interest at the prevailing rate; and,

B. Grant such additional or alternative relief as may appear to the Court to be just and proper.

Dated: New York. New York
     October 5, 2009

Respectfully submitted,

*Attorneys for Plaintiffs*

_____/S/_____

Josh Silber (JS-6070)
LINDEBAUM & SILBER PLLC
19 Park Avenue South
New York, New York 10016
(212)-532-0154
*Co-Counsel Plaintiffs*

_____/S/_____

Robert Neal Felix (RF-4229)
LAW OFFICE OF
ROBERT N. FELIX
11 Broadway, Suite 715
New York, New York 10004
212-747-1433
*Co-Counsel for Plaintiffs*

_____/S/_____

Donald J. Jaret (pro se)
LAW OFFICES OF DONALD
J. JARET, P.A.
2697 Botticelli Drive
Henderson, Nevada 89052
(305) 740-3383
*Co-Counsel for Plaintiffs*

_____/S/_____

Paul P. Rooney (PR-0333)
FUGAZY & ROONEY LLP
225 Broadway, 39th Floor
New York, New York 10007
(212) 346-0570
*Co-Counsel for Plaintiffs*

_____/S/_____

Howard Balsam (HB-3820)
LAW OFFICES OF
HOWARD BALSAM
122 East 42nd Street, Suite 1700
New York, New York 10168
*Co-Counsel for Plaintiffs*

_____/S/_____

Keith Michael Stern *(pro hac vice)*
SHAVITZ LAW GROUP
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
(561) 447-8831
*Co-Counsel for Plaintiffs*

_____/S/_____

Peter F. Valori *(pro hac vice)*
DAMIAN & VALORI LLP
1000 Brickel Avenue, Suite 1020
Miami, Florida 33131
(305) 371-3960
*Co-Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Paul P. Rooney, co-counsel for Plaintiffs, hereby certify that on October 5, 2009, I caused a true and correct copy of the annexed Second Amended Complaint to be served upon the counsel of record listed below by filing with the Court's ECF Filing System:

D. Andrew Byrne
BECKER & POLIAKOFF, P.A.
Alhambra Towers
121 Alhambra Plaza,10th Floor
Coral Gables, FL 33134
*Counsel for All Defendants*

Peter F. Valori *(pro hac vice)*
DAMIAN & VALORI LLP
1000 Brickel Ave., Suite 1020
Miami, Florida 33131
*Co-Counsel for Plaintiffs*

Josh Silber (JS-6070)
LINDEBAUM & SILBER PLLC
19 Park Avenue South
New York, New York 10016
(212)-532-0154
*Co-Counsel Plaintiffs*

Donald J. Jaret (pro se)
LAW OFFICES OF DONALD
J. JARET, P.A.
2697 Botticelli Drive
Henderson, Nevada 89052
(305) 740-3383
*Co-Counsel for Plaintiffs*

Robert Neal Felix (RF-4229)
LAW OFFICE OF
ROBERT N. FELIX
11 Broadway, Suite 715
New York, New York 10004
*Co-Counsel for Plaintiffs*

Keith Michael Stern *(pro hac vice)*
SHAVITZ LAW GROUP
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
*Co-Counsel for Plaintiffs*

Robert Neal Felix (RF-4229)
LAW OFFICE OF
ROBERT N. FELIX
11 Broadway, Suite 715
New York, New York 10004
212-747-1433
*Co-Counsel for Plaintiffs*

Howard Balsam
LAW OFFICES OF HOWARD BALSAM
122 East 42nd Street, Suite 1700
New York, New York 101068
*Co-Counsel for Plaintiffs*

Dated: October 5, 2009
    New York, New York

_____/S/_____

Paul P. Rooney
FUGAZY & ROONEY LLP
225 Broadway, 39th Floor
New York, New York 10007
(212) 346-0570
*Co-Counsel for Plaintiffs*